**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>61,488 COUNTERFEIT PERFUME BOTTLES,<br><br>*Defendants* in Rem. | Civil Action No. 20-5909<br>(JMV) (MF)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this civil forfeiture action, the government seeks to forfeit and condemn counterfeit perfume bottles seized at the New York/Newark seaport. Presently before the Court is the government's unopposed motion for default judgment and final order of forfeiture against 61,488 counterfeit perfume bottles as defendant *in rem* (the "Defendant Property"), under Federal Rule of Civil Procedure 55(b). D.E. 4. The Court reviewed all submissions made in support of the motion[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Plaintiff's motion is **GRANTED**.

---

[1] Plaintiff's declaration in support of its motion for default judgment will be referred to as "Decl.," D.E. 4-1.

I.      FACTS AND PROCEDURAL HISTORY[2]

On or about May 14, 2018, the Defendant Property entered the Port of New York/Newark under entry number EB5-15491810.  Compl. ¶ 11.  The shipment was manifested as 1,281 cartons of perfume (or 61,488 bottles) – 314 cartons of Versace "Eros" perfume and 967 cartons of Ralph Lauren "Polo Red" Perfume.  *Id.* ¶ 13.  The entry documentation indicated that the perfume was imported from India; Sushmaa International, Inc. ("Sushmaa") was listed as the importer of record.  *Id.*  The shipment was referred for further investigation because Customs and Border Patrol (CBP) officers suspected it contained counterfeit trademark-protected perfume.  *Id.*  Upon inspection, the CBP Intellectual Property Branch determined that the marks on the defendant perfume bottles "were substantially indistinguishable from protected trademarks," and  that the value of the perfume was $106,990.00.  *Id.* ¶ 12.

Approximately 46,416 of the perfume bottles had Ralph Lauren's trademarked "POLO PLAYER" symbol, along with the wordmarks "POLO RED" and "POLO RALPH LAUREN" in the same font as genuine Polo Red cologne; however, the boxes holding the perfume bottles "had labeling which, in small font and a run-on sentence, stated: 'Smart Collection Perfume in this product is a highly concentrated fragrance chosen for this product from the best sources around the world it is not connected with any registered brand our version of.'"  *Id.* ¶ 14.  The language on the box reinforced "the connection between the protected marks and the counterfeit products[.]"  *Id.* ¶ 15.  Additionally, the trade dress for the counterfeit bottles is "identical to that of the genuine product."  *Id.*  The "POLO RED" wordmark, "POLO PLAYER SYMBOL" design mark, and

---

[2] The facts of this matter derive from Plaintiff's Verified Complaint ("Compl."), D.E. 1, which the Court accepts as true for purposes of this motion for default judgment.  *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008).

"POLO RALPH LAUREN" wordmark are registered marks with the United States Patent and Trademark Office ("USPTO"), held by PRL USA Holdings Inc.  *Id.* ¶ 16.

Approximately 15,072 of the perfume bottles "bore a mark that is identical with or substantially indistinguishable from Versace's trademarked 'MEDUSA HEAD' symbol on the bottle and the words 'VERSACE EROS' rather than 'VERSACE' on the bottle and box."  *Id.* ¶ 17.  The label on the box stated: "our version of Versace Eros."  *Id.*  The bottles themselves had no descriptive language or disclaimer.  *Id.*  The "MEDUSA HEAD" design mark and "VERSACE" wordmark are held by Gianni Versace, S.p.A. and registered with the USPTO.  *Id.* ¶ 18.

On or about June 11, 2018, CBP seized the 61,488 perfume bottles at the New York/Newark Seaport.  *Id.* ¶ 19.  CBP sent a copy of the Notice of Seizure pertaining to the Defendant Property via certified mail to Sushmaa – the importer of record – on or about July 25, 2018.  *Id.* ¶ 20.  CBP advised Sushmaa that unless it obtained written consent from the trademark holders, the Defendant Property would be forfeited and disposed of in accordance with 19 C.F.R. § 133.52.  *Id.*  CBP also sent notices of trademark violations to both of the trademark holders associated with the counterfeit perfume bottles; however, to date, no written consent from either trademark holder has been submitted to CBP.  *Id.* ¶¶ 21-22.  On August 15, 2018, Sushmaa filed a claim requesting that this matter be referred to the United States Attorney's Office for the institution of judicial forfeiture proceedings.  *Id.* ¶ 23.

Plaintiff filed a Verified Complaint (the "Complaint") on May 14, 2020, alleging that the Defendant Property is subject to forfeiture on three counts:  (1) as merchandise bearing a counterfeit mark imported into the United States in violation of 15 U.S.C. § 1124 (Count One); (2) as merchandise bearing a confusingly similar mark imported into the United States in violation of 15 U.S.C. § 1124 and 19 U.S.C. § 1526(a) (Count Two); and (3) as merchandise attempted to be

introduced into the United States in violation of 15 U.S.C. § 1124 (Count Three).  D.E. 1.  On May 15, 2020, the Clerk of the Court issued a Warrant for Arrest *in rem*.  D.E. 2.  The government sent copies of the Verified Complaint and a Notice of Complaint for Forfeiture to counsel for Sushmaa on September 3, 2020.  Decl. ¶ 3.  The Notice instructed that any person who wished to assert an interest in and avoid forfeiture of the Defendant Property file a verified claim with the Clerk of the Court within thirty-five days.  *Id.*  The Notice also detailed the procedure for filing a claim and answer.  *Id.*  Additionally, the government posted notice of the forfeiture action on an official government website, http://www.forfeiture.gov, for thirty consecutive days.  *Id.* ¶ 4.

The government requested the entry of default against the Defendant Property on December 18, 2020, which was granted on December 21, 2020.  D.E. 3.  The present motion for default judgment was then filed.  D.E. 4.

**II.     STANDARD OF REVIEW**

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond.  *Anchorage Assoc. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *2 (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir.2005)).  "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'"  *Chanel, Inc.*, 558 F. Supp. 2d at 535 (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court must also consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

Additionally, in a civil asset forfeiture case, the Court must assess whether certain procedural requirements have been met. *United States v. $25,000 in U.S. Currency*, No. 18-14248, 2019 WL 950180, at *2 (D.N.J. Feb. 7, 2019). "Civil asset forfeiture actions *in rem* are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and 18 U.S.C. § 983. *United States v. $18,395.00 in U.S. Currency*, No. 17-148, 2017 WL 6550484, at *2 (D.N.J. Dec. 21, 2017). Under the Supplemental Rules, the government must file a verified complaint that states the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the Defendant Property, and venue. Supp. R. G(2)(b). The verified complaint must also "describe the property with reasonable particularity"; "if the property is tangible, state its location when any seizure occurred and – if different – its location when the action is filed"; "identify the statute under which the forfeiture action is brought"; and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* G(2)(c)-(f).

5

Additional requirements are imposed by the Supplemental Rules.  Before the government may seize property, the Clerk of Court "must issue a warrant to arrest the property if it is in the government's possession, custody, or control."  *Id.* G(3)(b)(i).  "The Government must also publish notice of the forfeiture action for any potential claimants of which it is not aware, and provide direct notice to any potential known claimants."  *United States v. $240,431 in U.S. Currency*, No. 19-12834, 2020 WL 1182909, at *3 (D.N.J. Mar. 11, 2020) (internal citations omitted).

### III.   ANALYSIS

#### A.  Requirements of Supplemental Rule G

The government has satisfied the requirements under Supplemental Rule G.  On May 14, 2020, the government filed a verified complaint.  D.E. 1.  The Complaint states that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355(a).[3]  Compl. ¶ 3.  The Complaint also states that venue is proper pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(b).  Compl. ¶ 4.  Because the Defendant Property was seized in the District of New Jersey, this Court has *in rem* jurisdiction.  28 U.S.C. § 1355(b)(1)(A) ("A forfeiture action or proceeding may be brought in . . . the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred.").  The Complaint describes the property with reasonable particularity.  As detailed above, the Complaint provides a description of the 61,488 counterfeit perfume bottles and their labeling.  Compl. ¶¶ 14-18.  Additionally, the Complaint indicates that the seizure of the Defendant Property occurred at the New York/Newark seaport.  *Id.* ¶ 19.

---

[3] Section 1355(a) provides that "district courts shall have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any . . . forfeiture[.]"  And Section 1345 indicates that "the district courts shall have original jurisdiction of all civil actions . . . commenced by the United States[.]"

The Complaint indicates the statutes under which the forfeiture action is brought and sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Count One is brought under 19 U.S.C. § 1526(e) and alleges a violation of 15 U.S.C. § 1124 based on counterfeit merchandise.  *Id.* ¶¶ 24-25.  19 U.S.C. § 1526(e) permits seizure of any merchandise imported into the United States that bears any counterfeit mark, in the absence of the trademark owner's written consent.  15 U.S.C. § 1124 provides, in relevant part, that no article of imported merchandise shall "simulate the name" of a manufacturer, "copy or simulate" a registered trademark, or bear or name a trademark calculated to induce the public to believe the item was manufactured in the United States.  The Complaint adequately alleges that the imported Defendant Property simulated Ralph Lauren's trademarked "POLO PLAYER" symbol, and its wordmarks "POLO RED" and "POLO RALPH LAUREN."  Compl. ¶¶ 13-16.  The imported Defendant Property additionally simulated Versace's trademarked "MEDUSA HEAD" symbol and used the "VERSACE" wordmark.  *Id.* ¶¶ 13, 17-18.  Neither trademark holder provided written consent.  *Id.* ¶ 22.  The Court concludes that the government is reasonably likely to meet its burden of proof on Count One.

Count Two is also brought under 19 U.S.C. § 1526(e) and alleges a violation of 15 U.S.C. § 1124 based on confusingly similar merchandise and a violation of 19 U.S.C. § 1526(a).  As noted, 15 U.S.C. § 1124 prohibits imported merchandise from bearing a name or trademark that is calculated to induce the public to believe the item was manufactured in the United States.  19 U.S.C. § 1526(a) makes it unlawful "to import into the United States any merchandise of foreign manufacture if such merchandise . . . bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office."  The Complaint alleges that the "POLO RED" wordmark, "POLO PLAYER

SYMBOL" design mark, and "POLO RALPH LAUREN" wordmark are registered with the USPTO and were used on the Defendant Property in a way that was likely to confuse consumers into believing that it was a genuine product. Compl. ¶¶ 15-16. The Defendant Property also used the "MEDUSA HEAD" design mark and "VERSACE" wordmark, which were registered with the USPTO. *Id.* ¶ 17-18. The government is reasonably likely to meet its burden on Count Two.

Count Three is brought under 19 U.S.C. § 1595a(c)(2)(C) as merchandise attempted to be introduced into the United States in violation of 15 U.S.C. § 1124. 19 U.S.C. § 1595a(c)(2)(C) provides that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law . . . may be seized and forfeited if . . . it is merchandise or packaging in which copyright, trademark, or trade name protection violations are involved." For the reasons discussed above, the Complaint adequately alleges that the Defendant Property violates trademark laws. As a result, the government is reasonably likely to meet its burden on Count Three.

As for the remaining requirements, in accordance with Supplemental Rule G(3)(b)(i), the government obtained an arrest warrant from the Clerk of Court. D.E. 2. The government also followed the proper procedures to provide notice to potential claimants. On September 3, 2020, the government sent copies of the Complaint and the Notice of Complaint for Forfeiture to counsel for Sushamaa. Decl. ¶ 3. The Notice of Complaint stated that any individual wishing to assert an interest in and avoid forfeiture of the Defendant Property was required to file a verified claim within thirty-five days and detailed the procedure for filing a claim and answer. *Id.* The government additionally posted notice of this forfeiture action on an official government website, which ran for thirty consecutive days through October 1, 2020. *Id.* ¶ 4. No potential claimants filed verified claims for the Defendant Property, and the time period for filing a verified claim has expired.

The Court concludes that the government satisfies the procedural requirements of Supplemental Rule G.

### B. Requirements of Federal Rule of Civil Procedure 55

"Because no potential claimant filed a claim for the Defendant Property within the time period set forth in the Government's notice, entry of default in the Government's favor is appropriate." *$240,431 in U.S. Currency*, 2020 WL 1182909, at *5; *$25,000 in U.S. Currency*, 2019 WL 950180, at *5. In order to fully assess whether default is appropriate, the Court will also consider the general default rules. As explained above, before entering default judgment, the Court must assess three factors that determine the appropriateness of the judgment: (1) whether the plaintiff would suffer prejudice if default judgment were denied, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's own culpable conduct caused the delay in responding to the complaint. *Chamberlain*, 210 F.3d at 164.

First, in the absence of default judgment, the government will be prejudiced because the failure of any claimant to come forward leaves the government with no other means to vindicate its claims. *$25,000 in U.S. Currency*, 2019 WL 950180, at *5. Second, "it is axiomatic that the Court cannot consider any defenses because no claims have been filed asserting a defense." *Id.* And third, the delay here is apparently caused by culpable conduct. Proper notice of this action was provided both to known and unknown potential claimants and, to date, none have filed a claim or otherwise participated in this matter.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment and for final order of forfeiture is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated:		August 17, 2021

*/s/ Joe Vazquez*
John Michael Vazquez, U.S.D.J.
